## SUPREME COURT.

THE PEOPLE *ex rel.* EDWARD M. BANKS and others, appellants agt. THE BOARD OF EDUCATION of the city and county of New York, respondents.

By the provisions of the act of 1864, principals (teachers) and vice principals (teachers) for the *common schools* in the several wards in the city of New York, shall be *appointed* by the *Board of Education,* upon the written nomination of a majority of the trustees of the ward.

The actual appointment being thus vested in the Board of Education, it necessarily follows that the *power of removal* of teachers is also vested exclusively in said board. Consequently the Board of Education have the power of deciding when a *vacancy* in the office of a teacher has occurred.

Therefore, the *tender of resignation* by a principal or vice principal, should be directed and delivered to the *Board of Education,* and not to the *trustees of common schools of the ward* where such principal or vice principal is acting.

*New York General Term, November,* 1866.

*Before* INGRAHAM CLERKE *and* BARNARD, *Justices.*

APPEAL from order made by Mr. Justice BARNARD, denying motion for mandamus.

The relators, citizens of this state and residents of the twenty-first ward of the city, and trustees of common schools in that ward, on an order to show cause, applied for a mandamus to compel the defendants, the Board of Education, to appoint Abner B. Holley principal teacher of the male department of ward school No. 49, situated in said ward.

The motion was denied on the moving papers, no papers being read or used in opposition.

The facts upon which the application was based, aside from their bearing upon the position and office of the relators, and the organization of the school department and the schools under its charge, were simply these :

1st. Prior to, and on January 19th, 1866, one William H. Wood was the principal teacher of the male department of ward school No. 49, duly appointed and acting.

2d. On that day, in a communication to the board of trustees of that ward, he resigned the position. The resignation to take effect May 1st, 1866.

3d. On the 19th day of February, 1866, the resignation was finally accepted by the board of trustees.

4th. On the 5th of March, 1866, at a meeting of the said board of trustees, all the members being present, Abner B. Holley was duly nominated for the position, to supply the place of Wood, as such principal teacher.

5th. The said trustees did thereupon, in proper form in writing, nominate Holley to the Board of Education for appointment to the place made vacant by the resignation, and said nomination in all things conforming to the statute, was on the 7th day of March, laid before the Board of Education.

6th. On the 2d day of May, 1866, the Board of Education took up and considered the said nomination, and refused to act, upon the ground that Wood had not resigned, and that there was, therefore, no vacancy.

7th. Holley was in all respects qualified for the appointment, and held the necessary certificates of qualification, and the relators are advised and believe that there was and is a vacancy in the position of principal teacher in the male department of said school, which should be filled by the appointment of their nominee.

H. W. JOHNSON *and*
W. F. ALLEN, *counsel for appellants.*

I. The relators as trustees, are by law charged with the conduct and management of the schools within the ward, and have a duty to perform in the selection and appointment of teachers, and in their capacity as trustees, may resort to a writ of mandamus, when that is a proper remedy, to compel action by others in matters affecting the schools under their charge.

As citizens interested in the performance of a duty imposed upon the Board of Education for the benefit of the public, they are proper actors and relators in this proceeding. (*Laws of* 1864, *p.* 825, § 12 ; *Id. p.* 828, § 23 ; *Laws of* 1851, *p.* 740, § 10 ; *Manual of Board of Education, pp.* 6, 7, 24, 40 ;

*People* agt. *Collins*, 19 *W. R.* 56 ; *Same* agt. *Tracy*, 1 *How. Pr. R.* 186 ; *Crary's N. Y. Practice*, 284 ; *Tapping on Mandamus*, 288–90.)

II. The Board of Education is a body corporate, and as such performs the duties devolved upon it, and the proceedings were, therefore, properly taken against it by its corporate name, as proceeding against the individual members of the board would have been irregular. (*Laws of* 1851, *p.* 735, § 2 ; *Id. p.* 736, § 8 ; *Manual of Board of Education*, 9, 14 ; *Tapping on Mandamus*, 315 ; *People* agt. *Supervisors of Livingston.*)

II. The duty of appointing teachers devolved upon the Board of Education, and concerns the public, and is ministerial in its character, and performance may be compelled by mandamus ; and in case of neglect there is no other adequate remedy. (*Ex parte Goodell*, 14 *J. R.* 325 ; *Hull* agt. *Supervisors of Oneida Co.* 19 *Id.* 259 ; *People* agt. *Collins*, 19 *W. R.* 56 ; *Ex parte Heath*, 3 *Hill*, 42 ; *Achley's Case*, 4 *Abb.* 35 ; *People* agt. *Tremain*, 17 *How. Pr. R.* 10.)

IV. The fact is undisputed that Wood, the former principal had resigned, and that there was a vacancy to be filled.

There is no pretense that the employment of Wood was for a specific time, and that he could not vacate the position and leave the school at the time indicated in his letter of resignation, and there is no statement or suggestion that his resignation was not effectual and operative.

It was addressed to the proper board—that having charge of the school, and whose duty it was to select and nominate a person to fill the vacancy.

But whether this is so or not, the vacancy was caused by the actual surrender of the employment, without a formal resignation to any board or body of men.

The resignation and surrender of the appointment and employment was absolute at the time of sending to the trustees, and took effect at the time indicated for that purpose. (*Gilbert* agt. *Luce*, 11 *Barb.* 10 ; *U. S.* agt. *Wright*, 1 *McLean*, 509 ; *People* agt. *Porter*, 6 *Cal.* 26 ; *Gates* agt. *Delaware*, 12 *Iowa*, 405.)

170    NEW YORK PRACTICE REPORTS.

People agt. The Board of Education of N. Y.

V. The decision or statement by the Board of Education, that Wood had not resigned his position, is not evidence upon that subject. The fact of resignation is a matter *in pais*, to be proved or disproved by competent evidence. It is alleged by the relators on oath, and is not controverted.

VI. It was the duty of the Board of Education to appoint Holley, the nominee of the relators. The right and duty of nomination is by law vested in the trustees. They are bound by law to make nominations for principal teachers of the ward schools, whenever a vacancy occurs, and the Board of Education are required to appoint on their nomination, and can appoint no other (*Laws of* 1864, *p.* 825, § 12).

The Board of Education act ministerially and not judicially in the premises. They have no discretion. It is quite likely that the court would not compel the board to act upon an unworthy nomination, but that cause for not proceeding must be shown.

Here the nominee is shown to be abundantly qualified, and in all respects a proper person to receive the appointment, and nothing is suggested adverse to this statement. It is not competent for the Board of Education arbitrarily to refuse to appoint the nominee of the trustees, and if they do so, they may be compelled to make the appointment. (*Newburgh Turnpike Co.* agt. *Miller,* 5 *Johns. Ch.* 13 ; *The People* agt. *Supervisors of New York,* 11 *Abb.* 121 ; 1 *Kent's Com.* 467 ; *Morris* agt. *People,* 3 *Denio,* 381 ; *Rex* agt. *Archbishop of Canterbury,* 15 *East,* 117 ; *Ex parte Jennings,* 6 *Cow.* 510 ; *People* agt. *Judges of Superior Court,* 5 *W. R.* 114 ; *People* agt. *Judges of Dutchess Co.* 20 *W. R.* 658.)

VII. The Board of Education was bound to act upon the nomination, and the writ should have gone upon the case made by the relators to put that body in motion (*Cases cited above*).

A. R. LAWRENCE, JR., *counsel for the Board of Education, respondents.*

I. The relators have no standing in court.

If Mr. Holley has been unjustly refused the possession of

an office to which he is legally entitled, *he* is the proper party to apply to the court for relief.

II. The law gives to Mr. Holley, if legally entitled to the position mentioned in the affidavit of the relator Banks, a remedy by a proceeding to obtain possession of the books and papers attached to such position (*People* agt. *Allen*, 42 *Barb*. 203).

He may also maintain an action against the respondents for the compensation attached to the office in question (*Gildersleeve* agt. *Board of Education*, 17 *Abb*. 201).

If not an officer, this is not a matter of public right, and relators cannot have a mandamus.

III. The affidavit of the relator shows that the respondents have acted upon the alleged nomination of Holley, and have, after investigation, pronounced a judgment on the subject. If their judgment is erroneous it can only be reviewed by certiorari. (*Laws of* 1864, *p.* 825, § 12 ; *Le Roy* agt. *Mayor, &c. N. Y.* 20 *Johns*. 430 ; *Ex parte Mayor of Albany*, 23 *Wend*. 277 ; *Betts* agt. *City of Williamsburgh*, 15 *Barb*. 255.)

IV. The points above taken show that both Holley and the trustees of the twenty-first ward have ample remedies if aggrieved, and that a mandamus is unnecessary to afford either of them redress.

Upon familiar principles, therefore, the writ of mandamus should not be granted. (*Ex parte Firemen's Ins. Co.* 6 *Hill*, 243 ; *Matter of Shipley*, 10 *Johns*. 484 ; *People* agt. *Supervisors of Chenango*, 1 *Kern*. 563 ; *People* agt. *Thompson*, 25 *Barb*. 73.)

V. The court is asked to compel the respondents to appoint a certain person to the office in question, when the law vests the appointing power in the respondents. In other words, it is asked to control the discretion of the respondents in regard to the principalship of the school in question. Courts never interfere by mandamus to control a discretion vested in inferior tribunals or municipal bodies. Besides, the relator asks too much. (*People* agt. *Board of Supervisors*, 10 *Abb*. 233 ; *Ex parte Nelson*, 1 *Cowen*, 417 ; *People* agt. *Brook-*

*lyn,* 1 *Wend.* 318; *Ex parte Brown,* 5 *Cow.* 31; *Hutchinson* agt. *Com. of Canal Fund,* 25 *Wend.* 692; *People* agt. *Supervisors of N. Y.* 1 *Hill,* 362.)

The papers presented by the appellant also show that in this case the respondents have exercised their discretion, and have rendered their judgment upon the point in dispute, to wit. the question of vacancy.

VI. There was no vacancy existing in the principalship of ward school No. 49, at the time the trustees sent the nomination of Mr. Holley to the respondents, or at the time that such nomination was made.

(*a*) The twelfth section of the act of April 25th, 1864, entitled "An act in relation to common schools in the city of New York," provides as follows:

"SEC. 12. The schools in the several wards shall be classified as grammar, primary and evening schools, and teachers for the said schools shall be appointed as follows : principals and vice principals by the Board of Education, upon the written nomination of a majority of the trustees of the ward, stating that the nomination was agreed to at a meeting of the board of trustees, at which a majority of the whole number in office were present. Other teachers, and also janitors, shall be appointed by a majority of the trustees for the ward, at a meeting of the board of trustees. Any teacher may be removed by the Board of Education, upon the recommendation of the city superintendent, or of a majority of the trustees for the ward, or of a majority of the inspectors for the district. The board of trustees for the ward, by the vote of a majority of the whole number of trustees in office, may also remove teachers employed therein, other than principals and vice principals, and may also remove janitors, provided the removal is approved in writing by a majority of the inspectors for the district, and provided further, that any teacher so removed shall have a right to appeal to the Board of Education, under such rules as it may prescribe; and the said board shall have power, after hearing the answer of the trustees, to re-instate the teacher" (*Laws of* 1864, *p.* 825).

Now as the power to appoint and remove principal teachers is vested in the Board of Education, it follows that the resignation of a principal must be sent to that board and accepted by them, before a vacancy can arise. (*People* agt. *Carrique,* 1 *Hill,* 93 ; *People* agt. *Comptroller,* 20 *Wend.* 595 ; *People* agt. *Mayor, &c.* 5 *Barb.* 43 ; *Laimbeir* agt. *Mayor, &c.* 4 *Sandf.* 109.)

It is not alleged nor pretended that Wood's resignation was ever sent to the Board of Education, or was ever received or accepted by them. (*See affidavit of Banks.*)

(*b*) Besides the Revised Statutes provide that the resignations of all public officers other than those officers who are particularly specified in article 4, chapter 5, of title 6, of part 1, shall be made to the body, officer or board that appointed them (1 *R. S. p.* 413, *5th ed*).

The Board of Education had the power to appoint principal teachers at the time it is alleged Wood resigned (*Laws of* 1864, *supra*).

VII. The nomination of Mr. Holley, even if properly made, gives him no right to the office of principal teacher of ward school No. 49.

Under the statute of 1864, to entitle a party to the office of principal in a ward school, two things must concur :

1st. He must be nominated by the trustees in the manner pointed out by the statute.

2d. He must be appointed by the respondents. (*Laws of* 1864, *p.* 825, § 12, *see* § *set out under 6th point ; White* agt. *Mayor, &c. of N. Y.* 4 *E. D. S.* 563.)

(*a*) The case of *White* agt. *The Mayor, &c., of New York,* is strongly in point in this connection.

In that case it appeared that the commissioner of streets and lamps notified Glover (the incumbent of the office of superintendent of streets), that White, the plaintiff, had been appointed to the office in question by him. The commissioner had the power to nominate, and by and with the consent of the board of aldermen, to appoint to such office.

It was held that until the board of aldermen had confirmed

White's appointment, Glover still remained in office (4 *E. D. Smith's Rep.* 563).

The difference between the case of White and this, is one in favor of the respondents here, because the respondents not only have the confirming power, but also the appointing power.

VIII. It is obvious that the power of appointment which is vested in the Board of Education by the act of 1864, is one involving the exercise of discretion, and that the power on the part of the trustees to nominate, gives them no right to insist that the Board of Education shall confirm their nomination.

(*a*) The elementary rule in the construction of statutes is, that the court should, from the whole scope and object of the statute, ascertain what the intent of the legislature was in passing the statute. (*Mayor, &c.* agt. *Walker,* 4 *E. D. S.* p. 268, *per* INGRAHAM, *F. J. delivering the opinion of the court.*)

So too, the general system of legislation upon the subject matter of a statute may be taken into view in order to aid the construction of a particular statute relating to the same subject. And a statute should be so construed as to suppress the mischief intended to be remedied. (*Fort* agt. *Burch,* 6 *Barb.* 60, 69, 71 ; *Jackson* agt. *Collins,* 3 *Cow.* 89.)

And whenever the intention of the legislature can be discovered, it should be followed with reason and discretion, though such construction may seem contrary to the letter of the statute. (*Jackson* agt. *Collins,* 3 *Cow.* 89 ; *People* agt. *Utica Ins. Co.* 15 *Johns.* 380 ; *Margate Pier Co.* agt. *Hannan,* 3 *B. & A.* 266 ; *Edmonds* agt. *Dick,* 4 *B. & A.* 212, *per* HOLROYD, *J.* ; *Rice* agt. *Mead,* 22 *How. Pr.* 449.)

(*b*) Applying the principles above stated to the statute under consideration, we say that the relator's construction of the act of 1864 is erroneous. This is apparent from previous legislation upon the subject, and from the mischief which the act of 1864 was designed to remedy.

Prior to the act of 1864, the power to employ and remove principal teachers was vested solely in the trustees. (*Laws of* 1851, *p.* 740, 741 ; *Laws of* 1854, *p.* 241.)

It had been decided in March, 1864, by this court at special term, that under the above cited statutes, the Board of Education could not interfere in any manner to supersede or set aside the decision of the trustees in the matter of the appointment or removal of teachers. (*McHugh* agt. *Board of Education*, 27 *How. Pr. R. p.* 463, *decided at Special Term by* SUTHERLAND, 1864 ; *affirmed by General Term,* 1864. *Opinion by* CLERKE, *J.* BARNARD *and* LEONARD, *JJ. concurring.*)

In April, 1864, after the decision of Judge SUTHERLAND, the act in question was passed, and the respondents contend that the object and design of the legislature was to confer upon the Board of Education a supervisory power which would enable them to control the trustees of the various wards. For this purpose they gave the Board of Education the power to appoint the principal and vice principal teachers, leaving to the local boards merely a nominating power, and they gave to the inferior teachers, whom the trustees still have the power to appoint, the right to appeal from any action of the trustees in relation to their removal.

In this way the mischief of the statutes of 1851 and 1854 was remedied.

The act of 1864 having been passed so closely upon the decision of this court in *McHugh's* case, the conclusion irresistably follows that it was passed to remedy the mischief or defect which that decision showed existed in the previous acts.

(c) The construction of the relator's counsel frustrates the whole object of the act of 1864.

It does not remedy the mischief contained in the acts of 1851, and the amendatory act of 1854. It leaves that mischief still subsisting, because under such construction the Board of Education become merely the registers of the nominations of the trustees, and the appointment is really made by the trustees.

(d) The error of the relator's counsel consists in looking only at the mere letter of the law. He supposes that the words "shall be appointed," as used in the 12th section,

are imperative, and make it incumbent upon the respondents to appoint whomsoever the trustees may nominate.

In ordinary cases it is true that the word "*shall*," imposes an imperative duty when used to define the powers of public officers in a public statute. Where, however, such a construction would defeat the whole object of the act in which the word is contained, as gathered from other parts of the act, such a construction will not be adopted by the courts (*Cases supra*).

IX. If the court should, however, be of the opinion that the decision of the court below was incorrect, the respondents ask to have the case remitted to the special term, so that they may read the affidavits prepared in opposition to the motion of the relator, the reading of which was rendered unnecessary by the decision of the court against the relator on the opening of his counsel. This right was reserved to respondents by the order of the special term; and the affidavits will in fact show that Mr. Wood never, in contemplation of law, resigned the position to which Mr. Holley aspires.

X. The order of the special term should be affirmed, with costs.

*By the court,* CLERKE, J.   I. The act of 1864 declares that principals and vice principals shall be appointed by the Board of Education upon the written nomination of a majority of the trustees of the ward.

The actual appointment then, is vested exclusively in the Board of Education. It necessarily follows that the power of removal is also vested exclusively in them; for if the trustees were permitted to exercise this latter power, they could at all times nullify the power of appointment given expressly to the Board of Education. The former could remove as fast as the latter may appoint. If the Board of Education then, have the exclusive power of removal, they alone have the power of deciding when a vacancy has occurred, whether by resignation or otherwise; which includes the power of accepting or not accepting a proposed resignation. Conse-

quently, the tender of resignation by a principal or vice principal, should be directed and delivered to the Board of Education, who alone have the power of accepting or not accepting it.

There was not, in the present case, any resignation by Wood to the Board of Education, and no acceptance by them of his intended resignation. This is essential to consummate a resignation; until this is done either by express acceptance or by the appointment of another in his place, an incumbent is never legally out of office. "Otherwise an unworthy person, guilty of the most flagrant violation of his duty, could by voluntary action on his part, in many cases, escape a trial and the deserved ignominy of a dismissal" (*The People ex rel. McCune* agt. *The Board of Police*, 26 *Barb. S. C. R.* 501). No vacancy having actually existed, the Board of Education were not bound to take any notice of the nomination by the trustees.

II. Even if there was a vacancy, we could not grant this particular application. We are asked to compel the Board of Education to appoint Abner B. Holley. Why? Merely because he was nominated by the trustees. This would be giving the appointment, instead of the nomination, to the trustees, in direct contravention of the act. Under no circumstances could we do anything more than compel the Board of Education to proceed to consider the nomination, and to exercise the discretion which the legislature has vested in them. We could not interfere with that discretion and order that the will of the trustees, or our will, should dominate over it.

The order must be affirmed, with costs.